MATTER OF CHARLES ELDRIDGE TOPORZYCKI

[No. 393, September Term, 1971.]

*Decided February 3, 1972.*

The cause was argued before MURPHY, C. J., and MORTON and ORTH, JJ.

*Charles A. Rees,* with whom was *Peter S. Smith* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, H. Gary Bass* and *Edward M. Ranier, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

CHARLES ELDRIDGE TOPORZYCKI was born 23 July 1953. His recorded difficulties with the law began during the ninth year of his life. On 21 March 1963 he was found delinquent and dependent upon a charge of failing to conform to school rules and regulations. He was detained at the Maryland Children's Center and then the Maryland Training School. He was released from detention and granted probation on 2 April 1963.[1] Charged with the theft of a bicycle, in May 1963 he was "dismissed from probation" and was committed to the Maryland Training School on the new charge. He was released 7 February 1964. On 13 April 1964 a warrant was issued charging him with being a run-away. There was an emergency hearing "for the reasons that on April 14, 1964 he was in the company of two other adolescent boys, broke and entered Jack's Tire Service Store and took therefrom seven transistor radios." He was detained at the Maryland Training School until 15 May 1964 when he was committed to that Institution. Commitment was rescinded on 23 June 1965. On 9 November 1965 he was found delinquent on two charges of arson and eight charges of larceny and placed on probation. On 4 January 1966, although found guilty of violating his probation, probation was continued. On 19 January 1966 he was found delinquent on the following charges: two offenses of shoplifting, trespassing, larceny, tampering with a motor vehicle, twelve offenses of larceny of an automobile (one of which was involved in an accident), and nine offenses of breaking into an automobile and stealing therefrom. He was committed to Maryland Training School and released on 9 November 1966. On 21 December 1966 he was found delinquent on two charges of stealing an automobile and committed to Boys' Vil-

---

1. He had been examined at the Johns Hopkins Hospital Diagnostic and Evaluation Center. Tentative findings based on the initial evaluation were: "Arrest hydroaphalus, brain damage, mental retardation—mild near borderline defective, minimal neurological dysfunction, behavior disorder, child mixed etrology."

lage. He escaped from the Village and was arrested on a warrant. On 21 May 1968 he was found delinquent on a charge of being ungovernable and beyond the control of his mother and committed to Boys' Village. That commitment was rescinded and he was committed to the Maryland Training School. On 1 June 1968 he was found delinquent on a charge of taking a female into a vacant house and placing hands on her. On 26 August 1968 he was found delinquent on two charges of breaking and entering and was remanded to the Maryland Training School. On 7 November 1968 he was found delinquent on a charge of being an escapee from Boys' Village and while an escapee stealing an automobile. He was again remanded to the Training School. On 13 February 1969 he was charged with stealing an automobile while an escapee from the Training School. The juvenile court waived its jurisdiction to the Criminal Court of Baltimore.[2] He was tried, found guilty and imprisoned. Released in due course he was charged with the larceny of an automobile on 29 April 1970. As he was then 16 years of age, he was tried in the Criminal Court of Baltimore, found guilty and on 25 June sentenced to one year. He was committed to the Maryland Correctional Training Institution at Hagerstown. His trial under adult procedures was by virtue of the exception contained in Code, Art. 26, § 70-1 (c).[3] The exemption as to Baltimore City of persons who had reached the age of 16 years from the Juvenile Causes Act was declared unconstitutional in *Long v. Robinson*, 316 F. Supp. 22. In *Greene v. State*, 11 Md. App. 106, 110 we stated that we

---

[2]. The history of Toporzycki's antisocial behavior is from a Memorandum dated 17 June 1971 of the Juvenile Court Services in the record before us and from an aperçu for the record by the judge presiding at the hearing of 12 January 1971 as discussed *infra.*

[3]. " '*Child*' means a person who has not reached his 18th birthday, except in Baltimore City, where, until July 1, 1971, 'child' means a person who has not reached his 16th birthday." See ch. 730, Acts 1970, which, effective 21 May 1970, extended the age distinction as to Baltimore City from its former termination date of July 1, 1970 to July 1, 1971. See also ch. 127, Acts 1966 and ch. 432, Acts 1969.

were persuaded to follow the *Long* ruling, but announced that it would not be applied to those cases which on 15 May 1969 had been "finally decided." [4] *Id.,* at 111. As Toporzycki was entitled to the benefit of the *Greene* ruling, on 18 December 1970, he was brought before a master in chancery assigned to conduct proceedings in juvenile causes. Code, Art. 26, § 69. The master waived jurisdiction. Exception was taken and on 12 January 1971 the matter was heard *de novo* before the judge assigned by the Supreme Bench of Baltimore City to exercise juvenile jurisdiction in the division of juvenile causes of the Circuit Court of Baltimore City. Code, Art. 26, § 51 (a) and § 69; Rule 908 e; Rule 915 of the Supreme Bench of Baltimore City. The upshot of the hearing was that on Toporzycki's specific request and agreement by the State, the court's order releasing him from the Maryland Correctional Institution to the juvenile authorities was rescinded and he was returned to that Institution to serve the balance of his sentence.[5] He got into further trouble promptly upon his release from incarceration. On 3 June 1971 a petition, no. 148578, was filed in the Baltimore City juvenile court charging that he was a delinquent child for the reason that he took and carried away an automobile on 27 May 1971. There was also filed a petition, no. 132166, charging him to be a delinquent child for the reason that on 9 February 1969 he took an automobile from a parking lot by hot-wiring it.[6] On 3 June 1971 the court issued an order stating that it had determined that it was necessary to detain Toporzycki

4. For the meaning of "finally decided" see *Greene,* note 1, at 111.

5. Toporzycki stated to the court that he wanted to return to Hagerstown to serve out the balance of the sentence he was then serving. "I didn't ask for this [hearing] anyway. I told them I didn't want it. * * * I told Legal Aid. * * * I told the Legal Aid man that I didn't want it three times." He would normally have been released under the one year sentence he was serving on 27 April 1971. As the court observed if it did not waive jurisdiction and found him to be delinquent he could be committed to a juvenile institution "where he could stay for up to three years."

6. The face of this petition states it was filed 14 April 1969. According to the docket entries it was filed 14 April 1971.

pending a hearing, and directed the warden of the juvenile detention center of the Baltimore City Jail to receive him to be kept under the warden's care and custody. The same date a waiver of jurisdiction hearing was requested by the State's Attorney. The hearing was had on 21 June 1971.[7] The State requested that the court "summarily waive" on petitions 148578 and 132166 "for the reason that jurisdiction was waived by this court on February 13, 1969" on another petition then before it. After full argument the court "under the provisions of Article 26 of the Annotated Code of Maryland, Section 70-16 "waived jurisdiction over Toporzycki with respect to each petition and ordered him held for action under the regular criminal procedures, setting bail at $2500 on each charge. He appealed from the waivers of jurisdiction. Code, Art. 26, §§ 70-16 (c) and 70-25.

It is patent from the transcript of the proceedings of the hearing that in waiving jurisdiction the court applied the statutory provision for waiver after summary review. The State so requested and the court proceeded in accordance with the request. The argument centered primarily on the requirements of a "summary waiver", the judge, the prosecutor and defense counsel each stating his conception of the nature of such a waiver and the procedure to be followed. At the very conclusion of the hearing on the point defense counsel said: "My final objection, Your Honor, is to the summary waiver of jurisdiction at this hearing." The objection was overruled.

The provisions with respect to waiver after summary review are in Code, Art. 26, § 70-16 (c):

---

7. At the hearing petition no. 148566 was also before the court. By it Toporzycki was charged by his mother with being a child in need of supervision for the reason that he was ungovernable and beyond her control. He had left home on 30 May 1971 and at the time the petition was filed his whereabouts were unknown. Code, Art. 26, § 70-1 (i). The court correctly pointed out that jurisdiction as to that petition could not be waived. Code, Art. 26, § 70-16 (a). Subsequently the mother said she would like to "dismiss" her petition. She informed the Assistant State's Attorney that her only reason for bringing the charge was to find the whereabouts of her son. The record before us does not show the disposition of it.

304

"An order of waiver shall be considered a final order and terminates the jurisdiction of the court over the case. If thereafter any minor with respect to whom the court has waived jurisdiction under this section comes within the provisions of § 70-2 (a) (1) [8] the court, after summary review, may waive jurisdiction."

By the words of subsection (c) the authority of the court to waive jurisdiction in its discretion after summary review rather than a full waiver hearing contemplated by subsection (a) is predicated upon an order of waiver of the jurisdiction over a minor "with respect to whom the court has waived jurisdiction *under this section*." (emphasis supplied).[9]

The order of waiver of 13 February 1969 was under the authority bestowed by Code, Art. 26, § 54. It provided:

"If any such child [10] is charged with the commission of an act or acts which would amount to

---

8. Code, Art. 26, § 70-2 (a) (1) reads:
"The court has exclusive original jurisdiction:
    (1) Over persons alleged to be delinquent children;".
9. Section 70-16 (a) provides:
"After a petition has been filed alleging delinquency and before the adjudicatory hearing the court, after the notice prescribed by the Maryland Rules, may hold a waiver hearing and waive the exclusive jurisdiction conferred by § 70-2, and may order the child or minor held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult. Notwithstanding anything to the contrary, jurisdiction may only be waived on (1) a child who has reached his fourteenth birthday, or (2) a child who has not reached his fourteenth birthday who is charged with committing an act which, if committed by an adult, would be punishable by death or like imprisonment."
Subsection (b) lists the factors to be considered:
"In making a determination as to waiver of jurisdiction the court shall consider:
    (1) Age of child.
    (2) Mental and physical condition of child.
    (3) The child's amenability to treatment in any institution, facility, or programs available to delinquents.
    (4) The nature of the offense.
    (5) The safety of the public."
10. That is any child brought before the judge in the exercise of juvenile jurisdiction.

a misdemeanor or felony if committed by an adult, the judge, after full investigation, may in his discretion waive jurisdiction and order such child held for action under the regular procedure that would follow if such act or acts had been committed by an adult."

There was no provision for waiver after summary review. Although the statute permitted waiver "after full investigation", Rule 911 b seemed to make any investigation discretionary—"The court may order that a waiver investigation be made and that the waiver hearing shall not commence until the investigation has been completed." No factors to be considered were spelled out, but when an investigation was made, Rule 911 b directed the report thereof "include all social study records that are to be made available to the court at the hearing." By ch. 432, § 2, Acts 1966, §§ 52 through 66 and § 68 of Art. 26 were repealed outright[11] and new §§ 70 through 70-26 were added. Section 5 of the Act provided that it take effect in Baltimore City on 1 June 1969.[12]

It is clear that the waiver on 13 February 1969 was under the former § 54 and not under the new § 70-16. Thus it could not serve as the basis of a waiver after summary review within the contemplation of § 70-16 (c). We reach this conclusion not only as compelled because of the explicit expression of legislative intent manifested by the plain words of the statute but as proper because of the criteria which the court must consider in making a just determination as to waiver of jurisdiction under § 70-16 compared to the ambiguous requirements under § 54 and Rule 911 b. In other words, we feel in any event that waiver after summary review may be made only after a waiver under the authority of and in accordance

11. As distinguished from § 51 which was repealed and re-enacted by § 1 of the Act.

12. Elsewhere, according to § 5, the Act took effect 1 July 1969 except for Montgomery County where it was to take effect only when §§ 72 through 90 of Art. 26, subtitle "Juvenile Causes in Montgomery County", were repealed.

with § 70-16. Within this frame of reference we hold that the orders of waiver of 21 June 1971 were improper and therefore an abuse of judicial discretion.

There remains inquiry whether the action of the court upon the proceedings of 12 January 1971 may serve as the basis of a waiver after summary review. We do not think it may. Not only was there no order of waiver then issued but it is apparent that the action of the court was not upon consideration of the factors required to be considered by it under § 70-16 (b). In fact, waiver of jurisdiction, one of three actions presented to the court at the 12 January hearing as possible to be taken, was to all intent and purpose rejected.[13] We hold that the action of the court on 12 January 1971 could not serve as the requisite foundation for a waiver after summary review.

The result of our holding is that there has been no valid waiver of the exclusive jurisdiction of the Circuit Court of Baltimore City, Division of Juvenile Causes, over Toporzycki, and he cannot be prosecuted for the criminal offenses which the acts alleged in petitions 14578 and 132166 comprise unless and until such jurisdiction is waived. The waiver cannot be made in the circumstances after summary review. There must be compliance with subsections (a) and (b) of § 70-16, and there may be utilization of the provisions of subsection (e), which are of course discretionary. We observe that we do not feel that the provisions of Rule 911 c are in anywise affected by ch. 432, Acts 1966, and if a case is transferred to criminal court the statement by the court of the grounds for the decision, separate from the order of transfer, shall be made as required by that Rule.

---

13. As posed by counsel at that hearing they were (1) dismissal of the petition (described by the court as rescission of its order transferring Toporzycki from prison to the juvenile court); (2) the juvenile court retaining jurisdiction and proceeding under juvenile procedures, thereby voiding the criminal conviction and sentence; (3) waiving its jurisdiction over Toporzycki. During the course of the hearing the court stated that if it waived jurisdiction there would be a brand new trial on the charge for which he was then serving a sentence. After defense counsel consulted with Toporzycki and his parents, Toporzycki opted the first and this was what was done.

This disposes of the case before us. Toporzycki would have us determine the constitutionality of that part of the statute providing for waiver after summary review. He urges that it is unconstitutional on its face and as applied to him. Our decision here does not depend upon the constitutionality,[14] either on the face or as applied, of the challenged provisions, and upon remand waiver after summary review will not be involved. For long it has not been the habit of appellate courts to decide questions of a constitutional nature unless absolutely necessary to a decision of the case. *Burton v. United States,* 196 U. S. 283, 295. As the Supreme Court said in *Siler v. Louisville & N. R. Co.,* 213 U. S. 175, 193: "Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons." The Court of Appeals of this State is in accord, *Dayhoff v. State,* 206 Md. 25,[15] and so are we. We shall consider the constitutional question when the need arises in a case before us.

Toporzycki also would have us hold that the lower court erred in not determining that there was "probable cause" to charge him with the acts alleged in the petitions and in not considering a motion to dismiss one of the charges. We held in *Matter of Thomas Williams Waters,* 13 Md. App. 95, 103 that "The sole function of the [waiver] hearing is to resolve the question of waiver *vel non* and that this is done on the assumption that probably the crime alleged was committed and that the juvenile committed it. Thus the State has no burden at the hearing to establish prima facie or otherwise corpus delicti and criminal agency." We applied that ruling in *Matter of Eugene Flowers,* 13 Md. App. 414. We are not persuaded to depart from it.

---

14. We note there is a severability clause. Art. 26, § 70-26.

15. *Dayhoff,* at 34, quoted *Jeffers v. State,* 203 Md. 227, 230: "It is an almost undeviating rule of the courts, both State and Federal, that a constitutional question will not be decided except when the necessity for such decision arises in the record before the court."

We do not think that a child is otherwise entitled to a "probable cause hearing" as such. The juvenile causes act does not prescribe one *per se* and we do not believe it to be constitutionally compelled,[16] particularly in the light of the safeguards in the statute, both explicit and implicit, and in Chapter 900 of the Maryland Rules of Procedure dealing with juvenile causes. We point to Art. 26, § 70-6, subtitle "Preliminary inquiry to determine whether petition should be filed; review; dismissal of petition by State's Attorney"; § 70-7, subtitle "Informal adjustment"; § 70-8 proscribing the admission in evidence of statements made or information secured incident to the preliminary inquiry in any hearing prior to the determination at the adjudicatory hearing or in any criminal proceeding against the child at any time prior to conviction; § 70-9, subtitle "When child may be taken into custody"; § 70-10 dealing with the duties of law-enforcement officers upon taking a child in custody; § 70-11 providing in detail when a child may and may not be placed in detention or shelter care; § 70-13, subtitle "Review of need for detention or shelter care; release; petition; hearing; notice." All these matters, and a waiver hearing if initiated by the State's Attorney, Rule 911 a, precede the adjudicatory hearing. We find no error here in the lower court not determining that there was "probable cause" to charge Toporzycki with the offenses alleged and in not considering a motion to dismiss one of the charges.

As is evident from the various amendments to the Constitution of the United States and from the Declaration of Rights of the Constitution of Maryland, as they have been from time to time interpreted, the means may not be justified by the end in our system of justice. Thus it is that we may not look simply to the result attained. That the lower court here may have arrived at a proper determination in having Toporzycki tried under regular

---

16. We have held that a preliminary hearing is not constitutionally mandated in criminal prosecutions. *Gerstein v. State*, 10 Md. App. 322, 326.

criminal procedures is not the point. It is rather whether the conclusion to waive its jurisdiction was reached in a lawful manner as the legislature prescribed. It was not. Toporzycki, no less than any other person, is entitled that it be.

> *Waiver of jurisdiction vacated and order holding appellant for action under regular criminal procedures reversed as to each of Petition 132166 and Petition 148578; case remanded for further proceedings in accordance with this opinion.*