## MATTER OF THOMAS WILLIAM WATERS

[No. 27, September Term, 1971.]

*Decided September 30, 1971.*

---

Submitted by *Solomon Reddick* for appellant.

Submitted by *Francis B. Burch, Attorney General, John P. Stafford, Jr., Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Bright*

*Walker, Assistant State's Attorney for Baltimore City,* for appellee.

ORTH, J., delivered the opinion of the Court.

## WAIVER OF JUVENILE JURISDICTION

A court conferred with jurisdiction in juvenile causes, see Code, Art. 26, § 51, may waive the exclusive jurisdiction over a delinquent child [1] conferred by § 70-2 and pursuant to § 70-16 may order the child held for trial under regular procedures of the court which would have jurisdiction over the offense if committed by an adult. It may do so upon a hearing [2] at which the child is entitled to representation by counsel, § 70-18 (d), after a petition has been filed alleging delinquency and before an adjudicatory hearing, after notice prescribed by Maryland Rule 911 a. Sec. 70-16 (a). In making determination as to waiver of jurisdiction the court shall consider: (1) age of child; (2) mental and physical condition of child; (3) the child's amenability to treatment in any institution, facility, or programs available to delinquents; (4) the nature of the offense; (5) the safety of the public. Sec. 70-16 (b).[3] We construed § 70-16 (b) in *Hazell v. State,* 12 Md. App. 144. We observed that not all the five relevant factors need be resolved against the juvenile to justify the waiver. And we felt that there was no utility in requiring the court to make an arithmetic-type calculation as to the weight given by it to each factor. We also considered in *Hazell* other aspects of the waiver hearing. Granting the critical nature of the hearing we held "that nothing in the constitution, State or federal,

---

1. A delinquent child means a child who commits a delinquent act. Sec. 70-1 (h). A delinquent act includes an act which would be a crime if done by a person who is not a child. Sec. 70-1 (g).

2. But when an order of waiver as to a child has been passed after a hearing as prescribed, thereafter upon further allegations of delinquency as to that child the court may waive jurisdiction after summary review. Section 70-16 (c).

3. For the purpose of making the determination the court may request a study concerning the child, his family, his environment, and other matters relevant to the disposition of the case. Sec. 70-16 (e); Rule 911 b.

requires the State to satisfy the court beyond a reasonable doubt that waiver is proper; the inquiry at the waiver hearing does not require a finding of guilt or innocence, or proof of the elements of any criminal offense." At 154. He thought that "a waiver is justified where a preponderance of the legally sufficient evidence shows that such a determination is proper in light of the factors to be considered under Section 70-16." [4] Id. We concluded, concurring with the holding in *Kemplen v. Maryland*, 428 F. 2d 169 (4th Cir.), that "juvenile jurisdiction is properly waived where, under Section 70-16, the juvenile is found, by an exercise of sound judicial discretion based upon legally sufficient evidence,[5] to be an unfit subject for juvenile rehabilitative measures." Id.

An aggrieved party may appeal to this Court from any

---

4. We found this to be in accordance with § 70-18 and Rule 912 c. At an adjudicatory hearing, see § 70-1 (x), delinquency must be proved beyond a reasonable doubt as must all cases in which an adult is charged under the juvenile causes act. Sec. 70-18 (a) and (b). In all other cases tried by the juvenile court, and, we noted in *Hazell* "presumably including waiver of jurisdiction hearing", the allegations need only be proved by a preponderance of the evidence. By Rule 912 c "The rule of evidence applicable to criminal cases shall apply to delinquency hearings. The rules of evidence applicable to civil cases shall apply to all other hearings."

5. We found in *Hazell* that hearsay evidence is not necessarily to be excluded. We noted that the cases, the statute and the Maryland Rules all contemplate that such reports as those of the Department of Juvenile Services will be utilized at waiver hearings despite their hearsay character. We believed that such use did not violate constitutional rights of the juvenile "so long as the juvenile's counsel is afforded reasonable access to the report, an opportunity to challenge or impeach its findings and conclusions, and the right to summon any person he may desire to testify at the waiver hearing." At 153. Also in *Hazell* we said that the fact that testimony may have been hearsay would not *per se* call for its exclusion from evidence or prohibit it from being considered in making the waiver determination, pointing out that in the circumstances there existent the juvenile was in no way harmed by it and that he was not denied due process or fair treatment by reason of it. But we stated "it would undoubtedly have been preferable * * * to have had a first-hand account of what occurred through the testimony of eyewitnesses." At 154.

A juvenile is protected if he testifies in his own behalf at a waiver hearing or if his parents, guardian or custodian testify for him. "No statement made by a child, his parents, guardian, or custodian at a waiver hearing * * * is admissible against him or them in criminal proceedings prior to conviction, except perjury." Sec. 70-16 (f).

final order of the juvenile court. Sec. 70-25. An order of waiver is a final order. Sec. 70-16 (c).[6]

## THE INSTANT CASE

On 15 October 1970 the State's Attorney for Baltimore City prepared a petition which was filed in the Circuit Court of Baltimore City, Division for Juvenile Causes, alleging that Thomas William Waters was delinquent for the reason that he robbed one Wade Thompson with a deadly weapon on 4 August 1970, violently stealing $127 and an undetermined amount of clothing. Rules 901, 902, 903 d. Counsel was appointed for Waters. A waiver hearing initiated by the State's Attorney was held on 22 January 1971. We summarize the pertinent evidence adduced.

Thompson, the victim, testified that he was working at "Mr. Clean Clothes" on 4 August 1970 when three boys came in, pulled out a revolver, told him to get on the floor, and stole money from the cash register. Thompson made a positive judicial identification of Waters as one of the robbers and said that he was the one who took the money out of the cash register. After the robbery Waters and another boy came back and warned Thompson not to identify him—"they said to tell the judge that it is not him."

Officer Edward Mello of the Baltimore City Police Department received a call of an armed holdup in progress and went to the Clean Clothes establishment, arriving about 3:00 P. M. Thompson gave a description of the robbers. While putting the descriptions over the air a call was received that three suspects were seen running into a house about a block away from the scene of the robbery. The police entered the house by the front and

---

6. " 'Party' means a child named in a petition, or his parent, guardian or custodian." Sec. 70-1 (e). See Rule 901 a 2. Thus the State, even though it must initiate the waiver hearing, has no right of appeal from a determination not to waive jurisdiction. Not only is the State ordinarily not within the meaning of "party" but under § 70-16 (c) only an order of waiver is considered a final order terminating the jurisdiction of the juvenile court over the case.

rear. One boy dressed only in shorts and a tee shirt ran out the door up the alley and another ran out and down the alley. They escaped. Waters was found on the second floor in a tee shirt and shorts. Told to put his clothes on he picked up a pair of gray pants on which was a cleaner's tag. He put them on and they were too small for him. He was arrested. In the bathroom the officers found some change and in the toilet tank more change, a roll of quarters and a roll of nickels. In a bedroom they found paper money. The gray pants were identified as stolen in the robbery. Waters offered no evidence.

The record showed that Waters became 18 years of age on 19 November 1970. See § 70-2 (e) (1). It also showed that on 27 January 1966 he was found delinquent on a charge of vandalism and given a warning. In August 1969 a charge of "assault and robbery" was dismissed in court because, in Waters' words, "it wasn't enough evidence." In March 1970 he was convicted of larceny and again in his words, "got two years probation." In November 1970 he was charged with homicide and at the time of the hearing here was awaiting trial under an indictment for murder in the first degree.[7]

The juvenile court waived jurisdiction and ordered Waters held for action by the grand jury. He appealed from the order. He claims that the waiver was not valid because the five factors to be considered were not prop-

---

7. The juvenile court does not have jurisdiction over a proceeding involving a child who has reached his 14th birthday, alleged to have done an act which, if committed by an adult, would be a crime punishable by death or life imprisonment (including a lesser offense or an offense arising out of the act) unless an order removing the proceeding to the juvenile court has been filed by the court exercising jurisdiction as in the interests of the child and/or society in accordance with Art. 27, § 594 A.

It seems incongruous that although when an order of waiver is passed by the juvenile court, "if thereafter any minor with respect to whom the court has waived jurisdiction under this section [70-16] comes within the provisions of § 70-2 (a) (1) [exclusive jurisdiction over persons alleged to be delinquent children] the court, after summary review, may waive jurisdiction.", § 70-16 (c), a full waiver hearing is required for the juvenile court to waive its jurisdiction with respect to a minor coming within the provisions of § 70-2 (a) (1) when that minor is awaiting trial in a criminal court for a crime punishable by death or life imprisonment.

erly applied to him and because he was not afforded an opportunity to testify.

The court dictated to the court reporter a brief statement of the grounds for its decision. Rule 912 c. It said:

> "The respondent is presently eighteen years of age. He was three months shy of that at the time of the commission of this alleged offense. He is a strong looking physically mature young man for his age. His past juvenile record is not what would be regarded as a serious one and he has never been on probation in the Juvenile Court or in any juvenile institutions. He was just given a warning. However, I do not feel that he would be amenable to treatment in the juvenile facilities, none the less considering what is available, because of the other factors involved here. The other factors being his apparent involvement in serious behavior. The fact that he is already going to be tried in the Criminal Court anyway and will be known to that tribunal and, I think, that in view of the fact, that he has to face a murder charge in the Criminal Court, that it would be wise to have all of the matters effecting him in a criminal way handled in the same tribunal. This is an extremely serious offense, assault and robbery with a deadly weapon with a gun, and I feel that the respondent does constitute some element of risk to the safety of the public."

Waters baldly alleges that the court did not adequately consider the five factors and apply them fairly. We do not agree. We feel it clear that in the light of the five factors a preponderance of the evidence showed the determination to waive jurisdiction was proper. We hold that there was no abuse of judicial discretion as the conclusion inherent in the waiver that Waters was an unfit subject for juvenile rehabilitative measures was based upon legally sufficient evidence.

We see no basis in the record to support the bald allegation that Waters was not afforded an opportunity to testify. It is clear that he was not called to testify by his counsel and that he did not offer or otherwise attempt to testify.[8] We cannot say from the record that he was denied his right to testify at the hearing or his right to summon any person he might have desired to testify on his behalf. It seems that the claim stemmed from the manner in which the hearing was conducted. At its start the court informed counsel:

> "Just so we understand the ground rules here this morning, it will be incumbent upon the State to make out a prima-facie case on this charge, which it may do if it wishes, through the narrative testimony of an officer. If the State sustains its burden in this regard, we will then examine the five criteria set forth in the statute to determine whether or not to waive jurisdiction. Those criteria being the age of the respondent, his physical and mental condition, his amenability to treatment in juvenile institutions, facilities, and programs; the nature of the offense charged, and the safety of the public."

It added that in the event waiver was declined, a master would hear the case on the merits because the court would "inevitably" be familiar with any prior record. This approach contemplates a waiver hearing as having two phases. The first is in effect a "preliminary hearing" in the sense of that which may be conducted when an adult is accused of a crime. The primary purpose of such a preliminary hearing is to determine whether an offense has been committed, and, if so, whether there is probable cause for charging the accused with that offense, that is whether he is to be held for the initiation of further

---

8. During the presentation of his prior record he volunteered information in clarification and explanation of the date on the "FBI rap sheet" and was heard but not under oath.

action against him. *Billings v. State,* 10 Md. App. 31, 33. Only when it is shown at the first phase that probably a crime was committed and the juvenile committed it, is the second phase reached. At this phase the court determines whether it shall retain its jurisdiction over the juvenile or waive it and in doing so it considers the five factors as spelled out by the legislature. We are not in accord with this interpretation of the waiver hearing. We believe that the sole function of the hearing is to resolve the question of waiver *vel non* and that this is done on the assumption that probably the crime alleged was committed and that the juvenile committed it. Thus the State has no burden at the hearing to establish prima facie or otherwise corpus delicti and criminal agency. We point out that § 70-16 does not designate or indicate that proof of the corpus delicti and criminal agency is a requisite to waiver. As we said in *Hazell* "the inquiry at the waiver hearing does not require a finding of guilt or innocence, or proof of the elements of any criminal offense." We find strong support in our belief that the corpus delicti and criminal agency need not first be shown at a waiver hearing in the proceedings required prior to the hearing. A waiver hearing cannot be conducted until after a petition alleging delinquency has been filed. Sec. 70-16 (a). Such a petition cannot be filed until approved by the intake officer. Before authorizing the filing he must consider the complaint. He may authorize the immediate filing if on such consideration he concludes that the facts appear to be sufficient for the filing, implicitly including that a crime was probably committed by the juvenile, and that judicial action is in the best interests of the public and the child. Rule 901 d. But if he believes further inquiry is desirable before acting on the petition, he may request the complainant (any person or agency having knowledge of the facts, Rule 901 b) and the parties to attend a voluntary interview. Rule 901 d. If after the interview he decides to authorize the filing of the petition he shall so inform the complainant and parties and shall explain the reasons for his decision.

Rule 901 f 1. In the light of these safeguards we think it meet that for the purpose of waiver *vel non* it be assumed that the juvenile committed the criminal offense alleged. This is not to say that evidence concerning the alleged act is not to be received at the waiver hearing. One of the factors to be considered is the nature of the offense, § 70-16 (b) (4) and we think this may encompass not only the type of crime but the circumstances surrounding its commission. That a victim was beaten or shot during the course of a robbery in addition to having his property stolen is certainly of probative value on the question of waiver. But such evidence is received, not with regard to a prerequisite to a consideration of the primary question of waiver, but with regard to the waiver question itself.

The lower court was wrong in deciding to reach the waiver question only if the State met its burden of making out a prima-facie case on the charge.[9] But the error was harmless in the circumstances.[10] As a practical matter Waters received more than that to which he was entitled.

The "ground rules" laid down by the court may have discouraged Waters from testifying on the question of the commission of the crime in the first phase of the hearing as conducted. If so he was not prejudiced for the evidence adduced at that phase was not required in any event. But it does not appear that the actions of the court in any way precluded him from testifying on the waiver phase. In fact, after Waters age and prior record were placed in evidence with regard to the waiver question the court asked if Waters wished to be heard on the question of waiver and his counsel said no.

We affirm the action of 22 January 1971 of the Circuit

---

9. It appears the lower court was not without doubt. Waters' counsel questioned "whether or not a prima-facie case is sufficient for consideration for waiver." The court replied: "Oh, it is sufficient and under the law I don't even think that is needed, but we do it anyway."

10. That the State proved the charge prima-facie as the court found was not disputed. Waters' counsel expressly stated that he did not even wish to be heard on the question.

Court of Baltimore City, Division for Juvenile Causes, waiving its jurisdiction over Thomas William Waters and ordering him held for action by the Grand Jury.

> *Waiver of jurisdiction and order holding appellant for action by the grand jury affirmed.*
> *Mandate to issue forthwith.*